IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Brent Austin, #227372, | ) |
|                   Plaintiff, | ) Civil Action No. 6:10-2286-RBH-KFM |
| vs. | ) **ORDER AND** |
| | ) **REPORT OF MAGISTRATE JUDGE** |
| Dr. R. Steen, Jon Ozmint, Dr. J. Alewine, Dr. M. Beinor, Nurse D. Cook, Warden Stone, Cecilia Reynolds, Jeanne McKay, Jerry Washington, Janice Phillips, and N. Dayne Haile, | ) |
|                   Defendants. | ) |

This matter is before the court on the defendants' motion for summary judgment (doc. 29). The plaintiff, a state prisoner proceeding *pro se*, filed his complaint seeking relief pursuant to Title 42, United States Code, Section 1983, alleging the defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

**PROCEDURAL HISTORY**

The plaintiff filed his complaint on September 2, 2010, alleging that while incarcerated within the South Carolina Department of Corrections ("SCDC") since July 2008, he received insufficient medical care at the medical clinics in Kershaw Correctional Institution ("Kershaw") and Catawba Pre-Release Center ("Catawba") to treat his purported respiratory and gastrointestinal problems. The defendants, all employed by SCDC during the time at issue, filed an answer on November 30, 2010, denying the allegations and raising various affirmative defenses. On January 19, 2011, the plaintiff filed a letter with attachments that

he described as "new evidence" (doc. 32). On the same day, the defendants moved for summary judgment and filed with the court affidavits of all defendants (docs. 29-2 through 12) and the plaintiff's medical records tracing his care at SCDC since July 2008 (doc. 29-1). By order dated January 20, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff thereafter responded in opposition to summary judgment on February 15, 2011. Within his response, the plaintiff made a motion for counsel to be appointed to represent him.

## **FACTS PRESENTED**

The plaintiff complains that after being diagnosed and provided medications for "H. Pylori, Respiratory, and etc....problems" (comp. at 4) by other doctors at Kershaw, he was transferred to Catawba in July 2008 and his conditions worsened. Thereafter, he made numerous sick-call requests and had frequent encounters with the medical staff at Catawba and Kershaw[1]. When he was dissatisfied with the course of the prescribed treatment or its purported ineffectiveness, he requested medical care from outside SCDC, but was told that he would have to retain such outside care himself. He alleges that the defendants' refusal to provide and pay for this additional medical care demonstrates deliberate indifference to his serious medical needs. He also alleges that the defendant doctors refused to provide procedures he deemed necessary and that a doctor threatened to take his medication away, all examples of deliberate indifference. He further asserts that the defendant medical professionals committed malpractice and were grossly negligent, as he continues to have health issues.

---

[1] Per the affidavit of Warden Stone, "There is no 24-hour medical care at Catawba. Our inmates are sent to Kershaw Correctional Institution for medical care if there is no medical clinic scheduled for Catawba" (Stone aff. ¶ 6).

2

Defendants Dr. Steen, Dr. Alewine, Dr. Beinor, and Nurse Cooke[2] are medical professionals at SCDC. Janice Phillips is the Administrative Coordinator in the medical lab at SCDC's Kirkland Reception and Evaluation Center. N. Dayne Haile is the Administrative Coordinator for SCDC's Division of Programs and Services. Warden Stone is the Warden at Catawba. Cecilia Reynolds is the Warden at Kershaw, and Jeanne McKay and Jerry Washington are Associate Wardens at Kershaw. Jon Ozmint is the former Director of SCDC.

A review of the affidavits reveals that of all the defendants named, only Dr. Steen, Dr. Alewine, and Nurse Cooke had face-to-face encounters with the plaintiff for his medical treatment. In his affidavit, Dr. Beinor testifies that he once signed off on a sick-call record for the plaintiff's reported toothache and sore throat, but never met with him (Beinor aff. ¶ 6). The remaining defendants' relevant involvement with the plaintiff, if any, was limited to receiving and/or responding to his written complaints. Collectively, the affidavits and medical records attest that the plaintiff received constant medical attention and that his complaints were answered, though not always to his satisfaction.

While the plaintiff filed a response in opposition to summary judgment, he did not challenge the sworn testimony contained in the affidavits.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is

---

[2] In her affidavit, Nurse Cooke provides this proper spelling of her name.

3

entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

***Deliberate Indifference to Serious Medical Needs***

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do

not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

While the plaintiff clearly had continuing medical needs while at Catawba and Kershaw, he cannot successfully contend that the defendants were deliberately indifferent to them. As documented in the medical records and the defendants' uncontested affidavits, the medical staff was keenly aware of the plaintiff's medical complaints and provided him thorough care on a regular basis. The court has carefully reviewed all of the submitted medical records and notes the efforts of Dr. Steen, Dr. Alewine, Nurse Cooke, and other medical staff to care for the plaintiff's respiratory and gastrointestinal problems. The filed medical records are set forth chronologically in separate encounters, noting each time a member of the medical staff dealt with the plaintiff and/or his medical needs. From July 16, 2008, through November 30, 2010, the medical staff had 186 recorded encounters with the plaintiff and/or his chart. During this period, the plaintiff received examinations, medical advice and instruction, and medications from the SCDC staff. Despite this, the plaintiff continues to argue that the care he received at SCDC was inadequate or ineffective and that he should have been seen by outside physicians. He points to his purported ongoing respiratory and gastrointestinal problems in support of this conclusion and his claim of deliberate indifference. However, that the defendants have not completely healed him does not mean they have violated the constitution. *See, e.g., Armour v. Herman,* No. 1:05-cv-295-TLLS, 2005 WL 2977761, at *3 (N.D. Ind. Nov. 4, 2005) ("The Eighth Amendment does not require medical success...."); *Ramos v. Artuz*, No. 00-cv-0149(LTS), 2003 WL 342347, at * 9 (S.D.N.Y. Feb. 14, 2003)(indicating that an unsuccessful course of treatment does not support a finding of deliberate indifference). As argued by the defendants, the plaintiff has presented nothing more than his unsubstantiated allegations that heightened outside medical care is required. Further, his contention that the defendants were deliberately indifferent to his medical needs because they failed to provide evaluative procedures such as throat x-rays or a colonoscopy is meritless. The records show that these procedures were indeed considered by the staff and

6

rejected as unnecessary. The plaintiff has failed to demonstrate otherwise. Lastly, the plaintiff claims that Dr. Steen was deliberately indifferent to his medical needs when he "threaten[ed] to take me off of all of medications" (comp. at 8). However, as his medical records document, the plaintiff continued to receive medications after his visit with Dr. Steen. Accordingly, even if this "threat" were made, it does not implicate the Eighth Amendment.

### *Medical Malpractice*

The plaintiff attempts to bring a cause of action of medical malpractice against the defendants in his complaint. However, even if these defendants' conduct rose to the level of negligence or medical malpractice, such claims are not actionable under Section 1983. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Accordingly, this cause of action fails.

### *Non-medical Defendants*

The plaintiff alleges that the remaining defendants, none of whom are medical professionals, were also deliberately indifferent to his medical needs. It appears from the record that former Director Ozmint, Wardens Stone and Reynolds, and Associate Wardens McKay and Washington were acting at all relevant times in a supervisory capacity. To the extent the plaintiff seeks to hold these defendants liable in their supervisory capacity, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). Furthermore, the plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791,

799 (4th Cir.).  The plaintiff has failed to make such a showing here.  Based upon the foregoing, the claim against these defendants fail.

Likewise the claims against Janice Phillips and N. Dayne Haile are meritless. Phillips testifies in her affidavit that she accepts and handles lab specimens from SCDC medical clinics and does not provide medical care to inmates.  She recalls no interaction with the plaintiff regarding the allegations in the complaint (Phillips aff. ¶¶ 2-5).  Haile testifies that she responded to a Request to Staff form (doc. 32) from the plaintiff in whcih he complained that he was not receiving appropriate medical treatment.  Haile responded to the request advising the plaintiff that she had forwarded a copy of his request to the Division of Health Services for investigation.  She further advised the plaintiff that she had been informed that the plaintiff had been seen and treated for multiple complaints by Health Services, and he could request outside elective medical treatment at his own expense if he wished to do so (Haile aff. ¶¶ 5-6; *see* doc. 32-2).  The court has considered her uncontradicted affidavit and her response on the plaintiff's request and finds that she cannot be described as deliberately indifferent.

***Qualified Immunity***

The defendants further argue they are entitled to qualified immunity as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known.  This court agrees.  Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual

8

constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). The plaintiff has failed to demonstrate that the defendants violated his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

***Eleventh Amendment Immunity***

In any event, the defendants are entitled to immunity under the Eleventh Amendment. While the Eleventh Amendment does not bar suits against government officials in their individual capacities, this principle is inapplicable here, as the only allegations levied against these defendants arise from their performance, or alleged lack thereof, in their respective official capacities as SCDC officials and employees. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and, therefore, "is no different from a suit against the State itself."). The SCDC is immune from monetary damages here. *See Abebe v. S.C. Dept. of Corrections*, C.A. No. 0:09-3111-MBS, 2010 WL 3258595, at *3 (D.S.C. Aug. 16, 2010) (stating that SCDC is an agency of the state and, as such, is immune from suit in federal court for alleged deprivation of civil liberties).

*Motion for Appointment of Counsel*

Within his response in opposition to summary judgment, the plaintiff requested that counsel be appointed to represent him. The Congress does not appropriate funds to pay attorneys who represent litigants in civil rights cases. 53 Comp. Gen. 638 (1974). Although this economic fact is not conclusively determinative of the issue, it is a practical consideration that cannot be ignored. Moreover, it has been authoritatively stated in this context that a person who has a legitimate civil rights claim for damages "will likely find private counsel available on a contingent fee basis." *Williams v. Leeke*, 584 F.2d 1336, 1339 (4th Cir. 1978). As set forth above, the plaintiff's case should not survive summary judgment, as he does not have a legitimate civil rights claim against the defendants. Appointment of counsel would not have affected this recommendation. Moreover, this court outlined proper procedure under the summary judgment rule for the plaintiff in its January 20, 2011, Order so he would not be deprived of a fair opportunity to present his case. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). The plaintiff thereafter filed a response in which he had no difficulty citing authority for his position. Accordingly, the plaintiff's motion for appointment of counsel is denied.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore,

IT IS ORDERED that the plaintiff's motion for appointment of counsel is denied. Furthermore,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 29) be granted.

                                          s/Kevin F. McDonald
                                          United States Magistrate Judge

June 16, 2011
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).